488 P.2d 1120 (1971)
Robert Lee ALEXANDER, Plaintiff in Error,
v.
Douglas A. WHITE and Rudolph V. and Albertine W. Sellers, Defendants in Error.
Douglas A. WHITE, Plaintiff in Error,
v.
Robert Lee ALEXANDER, Defendant in Error.
Nos. 71-142, 71-143, (Supreme Court Nos. 24326, 24381.)
Colorado Court of Appeals, Division I.
June 15, 1971.
Rehearing Denied August 4, 1971.
Certiorari Denied October 4, 1971.
*1121 Kripke, Carrigan & Dufty, P. C., Kenneth N. Kripke, Denver, for Robert Lee Alexander.
Erickson & Littell, Duane O. Littell, Denver, for defendants in error Rudolph V. and Albertine W. Sellers.
Max P. Zall, City Atty., Lloyd K. Shinsato, Lee G. Rallis, Asst. City Attys., for Douglas A. White.
Not Selected for Official Publication.
*1122 COYTE, Judge.
This case was transferred to the Court of Appeals pursuant to statute.
This is a consolidated appeal. Plaintiff in error, Robert Lee Alexander, was plaintiff below and brought an action against the defendant Douglas A. White and the City and County of Denver for injuries sustained as result of a motor vehicle accident between plaintiff's vehicle and a police car driven by the defendant White. The defendants, Rudolph V. and Albertine W. Sellers, were also sued because of injuries received as result of a fall on their land which occurred subsequent to the motor vehicle accident.
The City of Denver was dismissed on motion prior to trial and the defendants Sellers were dismissed upon motion at the conclusion of plaintiff's evidence. The jury returned a verdict in favor of the plaintiff and against the defendant White for $7,500.
Both the plaintiff and the defendant White prosecuted writs of error which were consolidated for this appeal. We will first discuss the errors claimed by plaintiff, and then those claimed by the defendant White.

I.
The first asserted error of plaintiff is that the trial court erred in instructing the jury that if they should find in plaintiff's favor, they were limited by statute to awarding him no more than $10,000 in damages.
The accident between the plaintiff and the defendant White occurred in February 1966 as the defendant was performing his function as a police officer. The plaintiff alleged the defendant White was negligent in driving his patrol car, and caused the collision which injured plaintiff. This allegation and ultimate finding of fact by the jury is not in dispute.
The dispute occurs because of the trial court's reliance upon C.R.S.1963, 13-10-1, et seq., which reads as follows:
"13-10-1. Who liable in case of injury.In case any injury to the person or property of another is caused by the tortious operation of a motor vehicle by a state, county, municipal or quasi-municipal police, fire or health department while engaged in the line of duty, the state, county, municipality or quasi-municipality and the motor vehicle drivers thereof shall be liable for such injury to the extent hereinafter stated; and subject to all defenses and laws as the same apply to such actions founded on tort.
"13-10-2. Limitation of Liability.  (1) (a) The liability imposed by this article shall be subject to the conditions provided by appropriate statutes or charter and shall be limited as follows:
(b) Bodily injury liability, ten thousand dollars for each person, * * *."
Accordingly, the trial court determined this statute meant that while operating a motor vehicle belonging to the city, a police officer such as the defendant White might be liable for his tortious conduct, but that such liability was limited in extent to $10,000.
It is plaintiff's theory that this limitation is not applicable to a motor vehicle driver because such drivers were always liable in tort for their individual misconduct, even before the passage of this statute. According to the plaintiff, the effect of this statute is merely to impose liability on the city where it did not exist before, and therefore the limitation contained in C.R.S.1963, 13-10-2, is applicable only to the new liability imposed on the city, not on the liability of the motor vehicle drivers which existed previous to this statute.
The difficulty with this theory is in reconciling it with the plain and unambiguous wording of the statute where it states:
"* * * and the motor vehicle drivers thereof shall be liable for such injury to the extent hereinafter stated. * * *"
The conjunctive "and" in the statute clearly implies both the city and its drivers are to be treated in an equal manner insofar as the limitations of liability contained in the statute are concerned.
In construing the statute in the plain and obvious meaning of the words used, United *1123 States Fidelity and Guaranty Co. v. First National Bank, 147 Colo. 446, 364 P.2d 202, we must conclude this limitation of $10,000 in damages applies to both the city and its drivers. To hold otherwise would be to hold the inclusion of the phrase "and motor vehicle drivers" as mere surplus, since its presence or absence according to the plaintiff's theory would be irrelevant and would cause no change in existing law. We must presume that in passing a statute, the legislature is cognizant of the existing law and thereby intended by this statute to effect a change in the law. Smith v. Miller, 153 Colo. 35, 384 P.2d 738; Board of County Commissioners v. Lunney, 46 Colo. 403, 104 P. 945.
Thus we must conclude the effect intended by passage of this particular statute was to limit the liability of the city and its drivers.
For similar reasons we find plaintiff's second argument on this point to be without merit. It is plaintiff's position that even if the limitation of liability were applicable as to the defendant White, it was waived as to him when a subsequent charter amendment was passed, which reads as follows:
"In all suits or actions brought against the City and County of Denver jointly with any of its officers or employees charging tortious acts of said officers and employees committed in the regular course of their employment, the City and County of Denver shall not avail itself of the defense of governmental immunity and shall be liable in the same manner and to the same extent as a private employer under like circumstances and pay all final judgments rendered against the said City and County of Denver." Denver City Charter Chap. 6.8-1.
This amendment provides that in tort suits the city shall not avail itself of the defense of governmental immunity. It does not state that neither the city nor its employees will avail themselves of the limit on liability contained in C.R.S.1963, 13-10-1. Again the clear wording controls, and a court must not interpret a statute to mean that which it clearly does not express. People ex rel. Marks v. District Court, 161 Colo. 14, 420 P.2d 236. Here we find nothing to indicate this amendment was designed to strip a defendant such as White of defenses made available to him by the state legislature, and we will not so construe it.

II.
The next argument concerns the refusal by the trial court to give plaintiff's tendered instruction 2a. If given, this instruction would have directed the jury to apportion the damages caused to plaintiff by the defendant White, from those damages occurring as a result of the defendants Sellers' act, if possible; if not possible, then all damages occurring as result of both accidents were to be assessed against the defendant White.
This instruction was not in accordance with either the law or the facts of the case, and it was not error to refuse to give this instruction.
The facts in the instant case show that the collision between the plaintiff's vehicle and the one driven by the defendant White occurred in February 1966. The accident occurring on Sellers' property occurred a year later, in February 1967.
As pointed out in the case of Bruckman v. Pena, Colo.App., 487 P.2d 566, one defendant cannot be held liable for damages caused by the subsequent negligent acts of another, even if the subsequent damages cannot be segregated from the damages caused by the first defendant. This is, of course, distinguishable from the situation where a defendant aggravates a plaintiff's pre-existing injury, in which case he might be liable for the total amount of damages if they are not capable of apportionment. Newbury v. Vogel, 151 Colo. 520, 379 P.2d 811.
Plaintiff, citing 25 C.J.S. Damages § 20, argues that even though the defendant White's negligent act occurred prior to his fall on the Sellers' property, the defendant *1124 White still might be liable for all the damages if the second injury were proximately caused by the first.
This rule of law is not applicable to the set of facts produced by the plaintiff. The second accident or fall occurred at night, when plaintiff, as Sellers' tenant, left his apartment to go to the street. As he was proceeding down the walk he allegedly found bushes blocking his path. He then left the walkway and attempted to go to the street by way of an embankment covered with snow. Because the embankment was steep, and the snow slippery, the plaintiff lost his footing and fell, sustaining the injuries alleged.
It is clear that under these facts, the fall was not proximately caused by the collision occurring a year before. Proximate cause is that uninterrupted flow of events which directly results in the accident complained of. Martin K. Eby Construction Co. v. Neely, 10 Cir., 344 F.2d 482, affirmed, 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75. The evidence here fails to establish in what manner defendant's negligent act of colliding with plaintiff in 1966 caused in a direct or proximate manner the slip-and-fall plaintiff suffered a year later. For this reason the tendered instruction was properly refused. Exchange National Bank v. Cullum, 114 Colo. 26, 161 P.2d 336; Snapp v. Manning, 77 Colo. 268, 236 P. 131.

III.
The third argument raised by plaintiff is valid. It concerns the dismissal of the defendants Sellers by the trial court, which cited Fox v. Martens, 132 Colo. 208, 286 P.2d 628, as authority.
The undisputed evidence in Fox, supra, clearly established that the plaintiff had a choice between walking over a dry, unobstructed sidewalk, and walking over the slippery, muddy lawn. Since the plaintiff voluntarily elected the more hazardous route, rather than the safe one, recovery was denied by a jury. The court did not direct a verdict.
In this case the facts are sufficiently distinguishable to take it out of the rule laid down in Fox, supra. Here plaintiff was a tenant of the Sellers, who had the duty of maintaining and keeping clear the concrete walkway leading from plaintiff's front door down to the street. Although there is evidence that another walk, from the back of plaintiff's apartment, was available, evidence was also presented to show that this walk was little used, and in fact unused by plaintiff for some time since he kept his back door padlocked from the outside because of a burglary of his apartment through this entrance.
On the night of the accident plaintiff left by the usual and more direct route to walk to the street. Although snow covered the ground, the walk had been cleared by the Sellers. However, plaintiff claimed that two large bushes flanking the walk and covered with snow blocked the passageway. Plaintiff further testified that he had not used this walk for a couple of months because of this obstruction, and that the bushes completely blocked the walkway. Instead of electing to push his way through this obstruction, as defendants claimed he should have done, the plaintiff chose to go to the street by walking over a short, sloping embankment. While thus proceeding, the fall occurred.
On this set of facts, we hold the trial court erred in dismissing the defendants Sellers from the suit. Three routes were available to plaintiff to leave his apartment. One was by means of the walkway to the front, which admittedly the Sellers as landlords had the duty of keeping clear. The second route, and one chosen by plaintiff, was to by-pass the alleged obstruction on the front walkway and go over the embankment. The third route available was by the back door of his apartment, and down a concrete walkway to the street.
Defendants Sellers' argument that the plaintiff either should have pushed his way through the obstruction on the front walk, or kept his back door open for use, is better addressed to the trier of fact, not this *1125 court. We cannot say as a matter of law that plaintiff acted in a manner inconsistent with that of a reasonably prudent person in choosing the route he did. Reasonable men might conclude plaintiff was not to be considered negligent in choosing this route, and that the Sellers were negligent in failing to keep the bushes from obstructing the passageway. Under such conditions where reasonable men might reach opposing conclusions from the same set of facts, it is for the trier of fact to determine if the Sellers were negligent, not the court as a matter of law. Chartier v. Winslow Crane Service Co., 142 Colo. 294, 350 P.2d 1044.

IV.
We will now consider the first of defendant White's assignments of error. This concerns the trial court's refusal to dismiss him at the conclusion of plaintiff's evidence.
The theory of the defendant White is that both he and the City and County of Denver were made jointly liable under C. R.S.1963, 13-10-1, and since the City was dismissed, as a matter of law, he too should have been dismissed.
The reason for dismissal of the City appears to have been the plaintiff's failure to comply with C.R.S.1963, 139-35-1, which provides:
"No action for the recovery of compensation for personal injury or death against any city of the first or second class or any town, on account of its negligence, shall be maintained unless written notice * * * is given to the clerk of the city. * * *"
Clearly, this statute is applicable only to the city and is available only to the city as a defense against any suit in tort brought by any plaintiff.
It is defendant White's position that, since he was jointly liable with the city, the dismissal of the city from the lawsuit, for any reason, automatically dismissed him.
However, the law on this point is clear. Where a defendant is jointly and severally liable with another in damages for injuries caused to a plaintiff, the plaintiff may freely elect to proceed against either of the persons jointly liable or against all of them. Alden v. Watson, 106 Colo. 103, 102 P.2d 479.

V.
Defendant White also argues that the trial court should have directed a verdict in his favor in that the evidence was legally insufficient to permit the jury to apportion the damages between the first and second accident, and that therefore no damages could have been assessed against him.
On the whole, there is sufficient evidence in the record to support a finding of some damages occurring strictly as a result of the first accident. Plaintiff presented evidence that he suffered pain and underwent medical treatment for the injuries caused by the first accident. The cost of this treatment and related expenses could then be strictly apportioned to this accident, and therefore he would be entitled to recover at least these damages. We are unable to speculate as to what the testimony will be and whether the jury will be able to apportion permanent disability on a retrial.

VI.
Defendant White's last allegation of error concerns the refusal by the trial court to give his tendered instruction Ib, pertaining to damages. In that instruction the jury was told that if it found in plaintiff's favor, to award only those damages for the injuries caused by the accident occurring in February 1966, and not those occurring as a result of the fall in February 1967. But if unable to divide or apportion those damages between the two accidents, then the jury was instructed to find for defendant White.
The essence of this instruction is that if the damages resulting from the accidents *1126 cannot be apportioned then the person causing the second accident is liable for the entire damages, and the person causing the first cannot be held liable for the damages resulting from the second injury. Defendant White was entitled to have the jury instructed on apportionment of damages in view of the testimony presented concerning two accidents. Bruckman v. Pena, supra.
We therefore direct that a new trial be held on the issue of damages to be assessed against the defendant White, in addition to a new trial being held on all issues pertaining to the defendants Sellers. For the trial court's guidance, the law enunciated in Bruckman, supra, must be followed in instructing the jury on how to assess damages against the defendant White.
Judgment is reversed and the cause remanded with directions for trial on all issues as to defendants Sellers and a retrial as to damages alone as to the defendant White.
DUFFORD and PIERCE, JJ., concur.